UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| US BANK NATIONAL ASSOCIATION, as Trustee for Specialty Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2006-BC2,<br><br>    Plaintiff<br><br>    v.<br><br>THEODORE W. THOMES, et al.,<br><br>    Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 2:19-cv-00477-JAW |

**ORDER ON PLAINTIFF'S MOTION TO SEVER COUNTERCLAIM**

Plaintiff seeks to sever its partition action from the counterclaim asserted by Defendant Theodore Thomes. (Motion to Sever, ECF No. 27.) Plaintiff maintains that the partition action is ready for final disposition while the counterclaim involves matters unrelated to the partition claim and the prosecution of the counterclaim could unreasonably delay the resolution of the partition claim. None of the parties filed a response to the motion to sever.

Following a review of the motion and the record, the Court concludes that severance is not appropriate and, therefore, denies the motion.

### BACKGROUND

In 2005, Renee Thomes, Defendant's spouse, granted Plaintiff a mortgage in certain real property located in Windham, Maine. The bank subsequently foreclosed on Renee's

interest in the property. Plaintiff now owns the property with Defendant as tenants in common. *See generally*, *Schaefer v. Peoples Heritage Sav. Bank*, 669 A.2d 185, 187 (Me. 1996) ("When the mortgage is foreclosed, the joint tenancy is severed and the mortgagee becomes a tenant in common"). In October 2019, Plaintiff commenced this action to partition the property.

Plaintiff alleges that physical partition is impractical and asks the Court for an order of equitable partition through the sale of the property. As part of his answer to Plaintiff's complaint, Defendant, who included Renee Thomes in the caption of his response,[1] asserts several claims against Plaintiff regarding the circumstances around and preceding the foreclosure of the property.

## DISCUSSION

Pursuant to Federal Rule of Procedure 21, a court may "sever any claim against a party." Fed. R. Civ. P. 21. Rule 21 "furnishes the mechanism for separating a case into separate actions." *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 558 (1st Cir. 2003). A court "may sever claims or parties 'when doing so would serve the ends of justice and further the prompt and efficient disposition of the litigation.'" *BBJ, Inc. v. MillerCoors, LLC*, No. 12-cv-11305-IT, 2015 WL 4465410 at *8 (D. Mass. July 21, 2015) (quoting *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154 (S.D.N.Y. 2003)).

In cases where physical division of the property is impractical, Maine courts exercising their equitable powers ordinarily partition jointly owned property by ordering

---

[1] Defendant did not, however, formally seek to add Renee Thomes as a party to this litigation.

the property sold and the proceeds divided, by assigning the property to one party with the requirement that they pay a sum of money to compensate the other, or by some contingent combination options. *See Hutz v. Alden*, 2011 ME 27, ¶¶ 13 – 14, 12 A.3d 1174, 1178; *Whittet v Whittet*, No. RE-11-26, 2013 WL 8114512, at *4 (Me. Super. Sep. 26, 2013). Courts examine "all . . . relevant equitable considerations" and factors, including but not limited to the length of occupancy, the efforts expended on the property, the expenses and delay of selling to a third-party, and the financial capacities of the parties. *Libby*, 430 A.2d at 40; *Ackerman v. Hojnowski*, 2002 ME 147, ¶ 20, 804 A.2d 412, 417 – 18; *Wicks v. Conroy*, 2013 ME 84, ¶ 19, 77 A.3d 479, 484.

Plaintiff's complaint and Defendant Thomes' counterclaims involve some common property-related issues such that in determining whether and how the property should be partitioned, the Court will likely be required to consider many of the facts and issues raised in Defendant's counterclaim. For instance, the equitable nature of the remedy could require the Court to consider the fairness of the parties' conduct toward each other, *see e.g.*, *Hamm v. Hamm*, 584 A.2d 59, 61 (Me. 1990) ("The clean hands doctrine is crystallized in the maxim that one who comes into a court of equity must come with clean hands"), and if there is a buy-out or the property is sold, the law may require the Court to consider any expenditures, waste, and exclusive possession of the property during the time the parties owned the property as tenants in common. *See e.g.*, *Palanza v. Lufkin*, 2002 ME 143, ¶ 14, 804 A.2d 1141, 1145, *holding modified on other grounds by Wicks v. Conroy*, 2013 ME 84, ¶ 14, 77 A.3d 479 ("A co-owner's exclusive use of jointly held property is a factor offsetting his expenditures on the property"); 78 Am. Jur. 2d Waste § 1 (waste includes

"both acts of commission and of omission . . . as an unreasonable and improper use and abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in substantial injury to the real estate"). Contrary to Plaintiff's contention, therefore, resolution of the complaint for partition will require consideration of some of the evidence and issues that will be relevant to the resolution of the counterclaim.

In addition, contrary to Plaintiff's argument, the *Rooker-Feldman* doctrine, *see generally*, *Silva v. Massachusetts*, 351 Fed. App'x 450 at *3 (1st Cir. 2009) (federal court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine where the plaintiff sought relief that required a challenge to state court foreclosure decision), does not support severance. At least some of Defendant's claims would not appear to involve a challenge to the state court foreclosure order. Given the facts and issues relevant to both the request for equitable partition and the counterclaim, whether Defendant can prevail on one or more of his claims is not controlling on the severance issue.

Plaintiff's contention that judicial economy militates in favor of severance is also unpersuasive. Plaintiff argues that severance is appropriate because Defendant's counterclaim includes claims that are triable to a jury and will require discovery while the partition action is ready for disposition because Defendant has been defaulted. First, regardless of whether Defendant's claims are triable to a jury, none of the parties has requested a jury trial and thus all claims will be tried to the Court. The Court, therefore, can convene one bench trial for all the claims. As to the potential effect of the default on the proceedings, the Court notes that Defendant's answer to the complaint, including the counterclaim, was filed on the same day, but docketed after, the clerk, upon Plaintiff's

4

request, entered default against Defendant based on Defendant's failure to file a response to the complaint by the deadline established by the Court.  (Order, ECF No. 19; Response to Complaint, ECF No. 20.)  Although Defendant has not filed a formal motion to set aside the default, there is considerable authority that could support construing Defendant's filing of his response to the complaint three days after the deadline, with his letter explaining the timing of his response, as the functional equivalent of a motion to set aside the entry of default.  *See e.g.*, Wright and Miller, 10A Fed. Prac. & Proc. Civ. § 2692 ("although Rule 55(c) envisions a formal motion for relief, the courts have shown considerable leniency in treating other procedural steps as equivalent to a motion, particularly when defendant's conduct evidences a desire to correct the default"); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("Even if a default had been entered, opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion"); *DirecTV, LLC v. Wright*, No. 15-CV-474-FPG, 2018 WL 10593633, at *2 (W.D.N.Y. Sept. 19, 2018)(when default judgment "is opposed in any form, however, the Court may construe the opposition as a motion to vacate the default"); *Flores v. Koster*, No. 3:11-CV-0726-M-BH, 2012 WL 6928017, at *1 (N.D. Tex. Dec. 28, 2012) ("When a defendant files a pleading subsequent to an entry of default, a court may construe it as a motion to set aside the default"); *Olson v. Lui*, No. CIV. 10-00691 ACK, 2012 WL 39140, at *2 (D. Haw. Jan. 6, 2012) (because "several filings have been made by the defendants who are in default or on their behalf," and "[i]n light of Defendants' pro se status . . . the Court construes Defendants' filings as implicitly containing a motion to set aside the entry of default under Federal Rule of Civil Procedure 55(c)); *Prudential Ins. Co.*

*of Am. v. Crouch*, No. CV 109-148, 2010 WL 5071392, at *2 n.5 (S.D. Ga. Dec. 7, 2010) ("Given the substance of [Defendant's] filing and her pro se status, the Court shall construe [Defendant's] response as a motion to set aside default"); *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) (explaining familiar rule to construe pro se filings liberally because "[o]ur judicial system zealously guards the attempts of pro se litigants on their own behalf"). Because the Court will adjudicate both the complaint and counterclaim and because the default might not limit proceedings on the complaint as Plaintiff anticipates, separate proceedings would not promote judicial economy.

In short, because Plaintiff's complaint and Defendant's counterclaim involve the same property and will require the Court to consider evidence and issues that are relevant to both, the interests of justice and judicial economy would not be served by separate litigation. Accordingly, severance is not warranted.

## CONCLUSION

Based on the foregoing analysis, the Court denies Plaintiff's motion to sever.

## **NOTICE**

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 2nd day of July, 2020.