UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for Specialty Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2006-BC2, <br><br> Plaintiff, <br><br> v. <br><br> THEODORE W. THOMES, et al., <br><br> Defendants. | No. 2:19-cv-00477-JAW |

**ORDER ON PENDING MOTIONS FOR SUMMARY JUDGMENT**

U.S. Bank brings two motions for summary judgment, one against Theodore Thomes' twelve counterclaims, and the other in favor of U.S. Bank's claim for equitable partition. Applying the traditional summary judgment standard, the Court concludes that U.S. Bank is entitled to summary judgment on all counterclaims and on its equitable partition count.

**I.   PROCEDURAL HISTORY**

On October 17, 2019, U.S. National Bank Association, as trustee for Specialty Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates, Series 2006-BC2 (U.S. Bank), filed a one-count complaint in the United States District Court for the District of Maine against Theodore W. Thomes, S. James Levis, Jr., and Donald P. Penta seeking equitable partition of property located at 135 Smith Road in Windham, Maine (the Property) pursuant to 14 M.R.S. § 6051(7).

*Compl.* ¶ 17(a) (ECF No. 1).  U.S. Bank seeks an order to have the Property sold with proceeds divided equitably among the parties.  *Compl.* ¶ 17(b).  Summonses were issued as to all Defendants on October 17, 2019.  *Summons Issued as to S. James Levis, Jr., Donald P. Penta, Theodore W. Thomes* (ECF No. 3).

On October 23, 2019, S. James Levis, answered the Complaint and filed a crossclaim against Theodore W. Thomes.  *Answer to Complaint of Defendants S. James Levis, Jr. and Cross Claim Against Theo[]dore W. Thomes* (ECF No. 4) (*Def. Levis Answer/Cross-cl.*).  In the crossclaim Mr. Levis alleges that Mr. Thomes delivered to him a promissory note in the amount of $60,000, secured by a mortgage on the Property.  *Id.* at 3.  Pursuant to the Levis crossclaim, if the Court orders a partition sale, Mr. Levis seeks the proceeds otherwise due to Mr. Thomes and asks that the proceeds be applied to the note and mortgage owed by Mr. Thomes.  *Id.*

On November 8, 2019, upon Mr. Thomes' motion, the Court ordered Mr. Thomes to answer the Complaint by November 13, 2019, later extended to December 20, 2019, by the Magistrate Judge.  *Order Granting Mot. to Extend Time to File Resp. to Compl.* (ECF No. 9).  On November 27, 2019, Mr. Penta filed his answer.  *Answer Filed by Def. Donald P. Penta* (ECF No. 11).  On December 23, 2019, U.S. Bank filed a motion for entry of default against Mr. Thomes alleging that Mr. Thomes had failed to appear pursuant to Federal Rule of Civil Procedure Rule 55(a).  *Mot. for Entry of Default* (ECF No. 16).  On December 23, 2019, the Deputy Clerk entered an order granting U.S. Bank's motion for entry of default as to Mr. Thomes.  *Order* (ECF No. 19).  Later that same day, Mr. Thomes answered the Plaintiff's Complaint and filed

a counterclaim against U.S. Bank. *Answer to Compl. and Countercl.* (ECF No. 20) (*Def.'s Countercl.*).

In his counterclaim, Mr. Thomes sets forth twelve counts: (1) that U.S. Bank executed a mortgage on Ms. Thomes' interest and failed to disclose that it would be tenants in common with Mr. Thomes; (2) that U.S. Bank asserted undue influence over Mr. and Ms. Thomes in doing so; (3) that U.S. Bank refused to allow Mr. Thomes to purchase the Bank's interest at fair market value; (4) that U.S. Bank's execution of the mortgage on Ms. Thomes' one-half interest of the Property led to thousands of dollars in legal costs for Mr. Thomes; (5) that publication of Mr. Thomes' name in the newspaper for the purposes of the public auction ruined Mr. Thomes' credit rating; (6) that U.S. Bank committed malicious abuse of legal process; (7) that U.S. Bank failed to pay adequate consideration for Ms. Thomes' one-half interest in the public sale; (8) that Mr. Thomes was harmed as a result of U.S. Banks' failure to pay adequate consideration; (9) that U.S. Bank exercised exclusive possession of the Property before it had satisfied the court's conditions on the judgment; (10) that the Property has declined in value since U.S. Bank exercised exclusive possession; (11) that U.S. Bank's agent Casco Bay Cleaning committed theft of Mr. Thomes' personal property on August 23, 2018; and (12) that Mr. Thomes is owed accrued compensation for home improvements on the Property made since the mortgage appraisal. *Id.* at 9-12.

On January 13, 2020, U.S. Bank filed an answer to Mr. Thomes' counterclaims. *Answer to Countercls.* (ECF No. 25).  On March 17, 2020, S. James Levis, Jr., filed a

motion for entry of default on his crossclaims, *Application to Clerk for Entry of Default Pur[s]usant to Fed. R. Civ. P. 55(a)* (ECF No. 28), which the Deputy Clerk granted on March 19, 2020. *Order Granting Mot. for Entry of Default* (ECF No. 29).

On July 24, 2020, U.S. Bank filed a motion to dismiss Mr. Thomes' counterclaims for failure to follow procedural requirements. *Mot. to Dismiss the Countercls. of Theodore and Renee Thomes for Failure to Attend Disposition and Other Procedural Deficiencies* (ECF No. 49). That same day, U.S. Bank also filed a notice of intent to file a summary judgment motion and requested a pre-filing conference under Local Rule 56(h). *Notice of Intent to File Mot. for Summ. J.* (ECF No. 50). On October 7, 2020, Mr. Thomes responded to U.S. Bank's motion to dismiss the counterclaims, *Resp. to Mot. to Dismiss Countercl.* (ECF No. 62), to which U.S. Bank replied on October 21, 2020. *Reply to Obj. to Mot. to Dismiss* (ECF No. 63). On November 2, 2021, Magistrate Judge Nivison recommended that the Court deny the Bank's motion to dismiss as to Mr. Thomes, grant the motion to dismiss as to Ms. Thomes, and impose sanctions on Mr. Thomes for failing to comply with discovery requirements. *R&R on Mot. to Dismiss/Order on Show Cause Order* (ECF No. 64). The Court affirmed the recommended decision on November 30, 2020. *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 67).

On December 7, 2020, U.S. Bank filed its Rule 56(h) pre-filing conference memorandum. *Countercl. Def.'s Pre-filing Conference Mem.* (ECF No. 69). A pre-filing conference was held before the Magistrate Judge on January 13, 2021. *Min. Entry* (ECF No. 74). On March 8, 2021, U.S. Bank filed two motions for summary

judgment, one as to Mr. Thomes' counterclaims, *Mot. for Summ. J.* (ECF No. 77) (*Counter Def.'s Mot.*); *Statement of Material Facts* (ECF No. 78) (CDSMF), and the other as to its Complaint seeking equitable partition of the Property. *Mot. for Summ. J.* (ECF No. 79) (*Pl.'s Mot.*); *Statement of Material Fact in Support of Pl.'s Mot. for Summ. J.* (ECF No. 80) (PSMF). On March 19, 2021, Mr. Levis consented to the entry of judgment in favor of U.S. Bank that "does not provide for any payment to Levis out of the proceeds of the partition and/or sale of the property which is subject to the mortgage of Levis." *Notice of Dismissal of Crosscla[i]m of Def. / Cross-Claimant Levis* at 1 (ECF No. 87); *Statement of Material Facts and Additional Material Facts Filed by Def. Donald P. Penta* ¶ 10 (ECF No. 96) (*Penta Additional SMF*).

On March 26, 2021, Mr. Penta filed a response to U.S. Bank's motion for summary judgment as to equitable partition. *Resp. to Mot. for Summ. J.* (ECF No. 93) (*Penta Resp.*); *Penta Additional SMF*.

On April 22, 2021, Mr. Thomes filed his response to U.S. Bank's motions for summary judgment with a corresponding statement of facts. *Answer to Summ. J.* (ECF No. 97) (*Counter Pl.'s Opp'n*); *Statement of Material Facts* (ECF No. 97) (CPSMF). U.S. Bank filed its reply to Mr. Thomes' response on May 6, 2021. *Reply Mem.* (ECF No. 99).

## II.   STATEMENT OF FACTS

### A.   Local Rule 56

"Consistent with the conventional summary judgment praxis, [the Court] recount[s] facts in the light most hospitable to the [nonmoving party's] theory of the case, consistent with record support." *Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11,

17 (1st Cir. 2002).  However, in deciding whether there are any genuine issues of material fact, the Court is constrained by the Local Rules of this District.  The Rules require that the moving party set forth a series of "separate, short, concise statement[s] of material facts, each set forth in separately numbered paragraph(s), as to which the moving party contends there is no genuine issue of material fact to be tried."  D. ME. LOC. R. 56(b).

The non-moving party is then required to "submit with its opposition a separate, short, and concise statement of material facts."  D. ME. LOC. R. 56(c).  With its reply, the non-moving party "shall admit, deny or qualify such additional facts by reference to each numbered paragraph of the moving party's statement of material facts."  D. ME. LOC. R. 56(c).  If a party denies or qualifies a fact, the party must support each denial or qualification with a record citation.  *Id.*  The Rule specifically states that the non-movant's reply statement "shall begin with the designation 'Admitted,' 'Denied,' or 'Qualified.'"  *Id.*

The Local Rules similarly address the consequences of failing to comply with the Rules: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations . . . shall be deemed admitted unless properly controverted."  D. ME. LOC. R. 56(f).  If a party asserts a fact unsupported by a record citation, or asserts "[c]onclusory allegations, improbable inferences, and unsupported speculation," the Court "may disregard [this] statement of fact."  *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)); D. ME. LOC. R. 56(f); *see also* D. ME. LOC. R. 56(c)(1)

Annotations ("A Court will refuse to accept qualifications that exceed the scope of the original statement because they are appropriately presented as additional facts, rather than qualifications" (citing *Wyman v. United States Surgical Corp.*, 2020 U.S. Dist. LEXIS 70314, at *8 n.2 (D. Me. Apr. 22, 2020))).  Moreover, the Court has no "independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."  D. ME. LOC. R. 56(f).

## B.   Theodore Thomes' Failure to Comply with the Local Rules

The Court recognizes that "these Rules are difficult for lawyers to comply with," thus "it is not surprising that [Mr. Thomes], himself not a lawyer, did not correctly respond to them."  *Widi v. McNeil*, No.2:12-cv-00188-JAW, 2013 U.S. Dist. LEXIS 137135, at *8 (D. Me. Sept. 25, 2013).  However, a party's "pro se status does not free a litigant in a civil case of the obligation to comply with procedural rules." *Rivera v. Riley*, 209 F.3d 24, 28 n. 2 (1st Cir. 2000); *see also U.S. Bank Tr., N.A. v. Moore*, No. 2:19-cv-00157-JAW, 2020 U.S. Dist. LEXIS 43962, at *2 (D. Me. Mar. 13, 2020); *Doe v. Solvay Pharms., Inc.*, 350 F. Supp. 2d 257, 260 n.3 (D. Me. 2004) (stating that, with respect to the Rules, a pro se party must be held to the same standard as any attorney).

While pro se litigants may receive the "benefit of the doubt" in some circumstances, *see Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007), the Court cannot "act as the Plaintiff's advocate, doing the Plaintiff's work for [him], searching through [his] response and affidavit to determine whether a fact has been effectively asserted[.]"  *Willette v. City of Waterville*, 516 F. Supp. 2d 139, 142 (D. Me. 2007). Indeed, the First Circuit has aptly noted that local procedural rules "have the

capacity to dispel the smokescreen behind which litigants with marginal or unwinnable cases often seek to hide." *Calvi v. Knox Cnty.*, 470 F.3d 422, 427 (1st Cir. 2006). The Court thus "endeavor[s] to apply the Local Rules evenly while at the same time [avoiding] affecting [Mr. Thomes'] substantive rights as a consequence of his procedural miscues." *Widi*, 2013 U.S. Dist. LEXIS 137135, at *8.

Moreover, given the procedural history of this case, it is reasonable to require Mr. Thomes to comply with the Local Rules. Even if Mr. Thomes was not originally on notice as to the procedural requirements for civil litigation, he was put on notice when the Court imposed sanctions on him for failing to follow discovery rules. *See Order Affirming the Recommended Decision of the Magistrate Judge.* Moreover, Mr. Thomes was again informed of the Rules when U.S. Bank filed its reply to Mr. Thomes' opposition. *Reply Mem.* at 1-3; *see Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980) ("Although [plaintiff], as a pro se litigant, may not have been aware of Rule 56(e) when he filed his first opposition, the defendants' reply memorandum put him on clear notice of the rule and the deficiencies of his initial response"). U.S. Bank cites Local Rules 56(c) and 56(f) and states that Mr. Thomes' "[o]pposition fails to comply with Local Rule 56(c)." *Reply Mem.* at 2. After U.S. Bank filed its motion, Mr. Thomes could have sought leave of the Court to cure his deficient response. *See Marcello*, 489 F. Supp. 2d at 78. Given Mr. Thomes' awareness of the procedural requirements and the Local Rules, the Court holds Mr. Thomes to the same standard applicable to any other litigant in assessing compliance with the Rules.

Here, Mr. Thomes, fails to properly respond to U.S. Bank's motion for summary judgment in accordance with the Local Rules. In his response, Mr. Thomes fails to "admit," "deny," or "qualify" any of the facts asserted by U.S. Bank as required by Rule 56(d). Moreover, Mr. Thomes asserts unsupported and argumentative facts in return. Given the Court's obligation to apply the Local Rules evenly to all parties, the Court must disregard any unsupported or argumentative portions of Mr. Thomes' statement of material facts. *See Cadle Co*, 116 F.3d at 960. The Court further accepts U.S. Bank's factual statements as true where Mr. Thomes has failed to admit, deny, or qualify the statements in accordance with the Local Rules, just as it would treat any other party before it. *See* D. ME. LOC. R. 56(f). Where Mr. Thomes properly contests facts, the Court will rely on his version of the facts according to the summary judgment standard. *See Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011) (stating that the non-moving party is entitled to have the summary judgment facts considered in the light most favorable to his cause).

## C.   Factual Background[1]

Theodore Thomes and Renee Thomes were joint tenants of real estate located at 135 Smith Road, Windham, Maine.[2] CDSMF ¶ 1. On March 23, 2018, the state of

---

[1]     The parties were previously involved in litigation in the state courts. For a full recitation of the parties' state litigation history, *see U.S. Bank v. Thomes*, 2013 ME 60, ¶¶ 2-7, 69 A.3d 411, 413-14. For the purposes of this order, the Court limits itself to the facts provided in the parties' statements of material fact.

[2]     Mr. Thomes does not contest that he and Ms. Thomes were joint tenants but contests the validity of the deed proffered by U.S. Bank. CPSMF ¶ 1. Even if Mr. Thomes had properly qualified this statement of fact pursuant to the Local Rules, the qualification is beyond the scope of U.S. Bank's stated fact. Additionally, even if the validity of the deed was at issue here, Mr. Thomes' attached Exhibit A is inadmissible because it has not been authenticated under Federal Rules of Evidence 901 and does not qualify as self-authenticating under Rule 902. FED. R. EVID. 901, 902; Caballero v.

Maine District Court entered a Judgment of Foreclosure and Sale in favor of U.S. Bank regarding foreclosure of its mortgage on Ms. Thomes' interest[3] in the Property. CDSMF ¶ 2.[4]  The Judgment of Foreclosure states that upon expiration of the ninety-day redemption period, U.S. Bank is "granted exclusive possession to the real estate mortgaged to it" and that Ms. Thomes is "[o]rdered to vacate the real estate at that time if [she] has not by that date redeemed the real estate in accordance with the statutory procedure."  CDSMF ¶ 4; CDSMF, Attach. 2, *J. of Foreclosure and Sale* at 2 (*J. of Foreclosure*).[5]  If Ms. Thomes did not redeem the property in time, U.S. Bank was to receive a "Writ of Possession" of said Property.  CDSMF ¶ 4, *J. of Foreclosure* at 2.

Ms. Thomes' right to redeem the property expired on June 21, 2018.[6]  Upon expiration of the redemption period, U.S. Bank had the right to possession of the Property.  CDSMF ¶ 4.  On August 14, 2018, U.S. Bank held a foreclosure sale at

Oriental Bank, No. 16-2952(GAG), 2019 U.S. Dist. LEXIS 206445, at *11 n.5 (D.P.R. Nov. 25, 2019) (citing *Carmona v. Toledo*, 215 F.3d 214, 131 (1st Cir. 2000)("Each document submitted in support of summary judgment must either be properly authenticated or must be self-authenticating under the Federal Rules")).

[3]     To be clear, the state of Maine District Court judgment of foreclosure and sale ran against Renee Thomes only, "and not against Theodore Thomes."  CPSMF ¶ 2, Attach. 2, *J. of Foreclosure and Sale* at 1.

[4]     Mr. Thomes fails to properly admit, deny, or qualify this statement and asserts the foreclosure judgment in the state of Maine District Court was obtained by criminal acts.  CPSMF ¶ 2.  The Court accepts U.S. Bank's fact as true under Rule 56(f).  Even if Mr. Thomes had properly responded to this statement under the Local Rules, the qualification exceeds the scope of the fact originally presented by U.S. Bank.  Finally, Mr. Thomes' statement cannot be treated as an additional fact for the purposes of summary judgment because Mr. Thomes fails to properly cite the record.  *See* Rule 56(c).

[5]     The Court accepts U.S. Bank's statement as true for the reasons discussed in footnote 4.

[6]     The Court accepts U.S. Bank's fact for the same reasons discussed in footnote 4.  Mr. Thomes' assertion that the redemption period expired on May 20, 2018, rather than July 2, 2018, seemingly stems from a confusion between the ninety-day time period for redemption of property under 14 M.R.S. § 6323, and the sixty-day time period for attorney's fees under Maine Rules of Civil Procedure Rule 54(b)(3).  Regardless, even if the Court used Mr. Thomes' date of May 20, 2018, Mr. Thomes does not allege that Ms. Thomes exercised her right of redemption within the statutory period.

which U.S. Bank was the highest bidder.[7]  CDSMF ¶ 5; CDSMF, Attach. 3 at 1.  As the highest bidder, Ms. Thomes' interest transferred to U.S. Bank pursuant to the Foreclosure Judgment on November 14, 2018.  CDSMF ¶ 6; CDSFM, Attach. 3 *Foreclosure Deed* at 1.  After the foreclosure sale, U.S. Bank and Mr. Thomes owned the Property as tenants in common.  PSMF ¶ 1; *Compl.* ¶¶ 7-9.  The Property is not capable of being physically partitioned between U.S. Bank and Mr. Thomes.  PSMF ¶ 2; *Compl.* ¶ 10.  U.S. Bank has no other adequate remedy at law and has the right to order partition of the Property.  PSMF ¶¶ 3-4; *Compl.* ¶¶ 11-12.

A writ of execution in favor of Donald P. Penta and against Mr. Thomes is also recorded against the Property in the Cumberland County Registry of Deeds.  PSMF ¶ 6; *Compl.* ¶ 14.  On August 20, 2012, the Maine Superior Court granted Mr. Penta an attachment in the amount of $600,000 against Mr. Thomes, which was recorded in the Registry of Deeds in Cumberland County.[8]  *Penta Additional SMF* ¶ 1 .  The Superior Court then issued an order of attachment in the case and granted a judgment of $508,723.00 in favor of Mr. Penta.  *Penta Additional SMF* ¶¶ 2-3.  On May 1, 2013, the Superior Court issued an amended judgment against Mr. Thomes in the amount of $508,723, plus $5,000 in attorney's fees, $850 in expenses, and $868.80 in costs of suit.  *Penta Additional SMF* ¶ 4.

On February 4, 2014, the Maine Law Court affirmed the Superior Court's denial of Mr. Thomes' motion for relief from Mr. Penta's judgment.  *Penta Additional*

---

[7]    The Court accepts U.S. Bank's statement as true for the reasons discussed in footnote 4.

[8]    U.S. Bank does not contest any of Mr. Penta's statement of material fact.  The facts are therefore admitted under the Local Rules.

*SMF* ¶ 5.  On March 12, 2014, the Superior Court issued a Writ of Execution on the amended judgment, which was subsequently recorded on March 18, 2014.  *Penta Additional SMF* ¶¶ 6-7.   On March 17, 2014, Mr. Penta sent Mr. Thomes notice of the recording of the writ in the Registry of Deeds.  *Penta Additional SMF* ¶ 8.  As of March 19, 2021, Mr. Penta has only received $13,744.25 on the amended judgment. *Penta Additional SMF* ¶ 11.

## III.   THE PARTIES' POSITIONS

### A.   U.S. Bank's Position

In U.S. Bank's first motion for summary judgment on Mr. Thomes' counterclaims, U.S. Bank addresses each counterclaim in turn.  Regarding Counts One, Two, and Four, which involve alleged facts concerning the creation of the mortgage and the loan to Ms. Thomes, U.S. Bank argues that Mr. Thomes fails to state any claims on which relief can be granted.  *Counter Def.'s Mot.* at 6-8.  Even if Mr. Thomes had properly asserted any claims arising from the mortgage's creation, U.S. Bank says that the claims are time barred and should have been brought as compulsory counterclaims in the original 2005 litigation.  *Id.*  As to Count Three, which claims that U.S. Bank's counsel refused Mr. Thomes' offers to purchase the Bank's interest in the property, U.S. Bank similarly argues that Mr. Thomes has not asserted a proper claim regarding his alleged attempts to purchase the Bank's interest in the property.  *Id.* at 7.  "[A]t best, [Mr. Thomes] had the right to redeem the Property by paying the full amount due on [Ms. Thomes'] mortgage."  *Id.*

U.S. Bank argues that summary judgment should be granted on Count Five, which asserts that U.S. Bank harmed his credit rating and personal reputation by

naming him in the foreclosure action against Ms. Thomes.  U.S. Bank maintains it was privileged to publish Mr. Thomes' name as part of the statutory requirements for foreclosure.  *Id.* at 8-9.

As to Count Six, which asserts that U.S. Bank's attorney committed malicious abuse of process, U.S. Bank argues that Mr. Thomes cannot prove any of the elements of abuse of process.  *Id.* at 9.

Counts Seven and Eight claim that U.S. Bank grossly inadequately compensated Renee Thomes.  As to each Count, U.S. Bank argues that Mr. Thomes lacks standing to bring a claim alleging injuries to Ms. Thomes on the ground that she received inadequate consideration from the Bank.  *Id.* at 10.  U.S. Bank further argues that Mr. Thomes himself cannot allege harm from inadequate consideration because Mr. Thomes has no interest in Ms. Thomes' one-half of the property and could have redeemed her interest to mitigate any personal damage.  *Id.*

As to Count Nine, which asserts that U.S. Bank gained access to the  Property before it was legally entitled to do so, U.S. Bank argues that, pursuant to the Foreclosure agreement, the "redemption period expired on June 21, 2018; and [Ms. Thomes'] interest in the Property was then extinguished.  Given applicable law and the express terms of the Foreclosure Judgment, U.S. Bank was entitled to take possession as of June 22, 2018."  *Id.* at 10-11 (citations omitted).

As to Count Ten, which alleges that U.S. Bank allowed the Property to deteriorate during its possession, U.S. Bank states that "[a]ny allegations that

purported 'agents' entered the [P]roperty or caused damage are barred because such entities were independent contractors." *Id.* at 11.

In Count Eleven, which claims that agents of U.S. Bank impermissibly removed the Thomes' personal property, U.S. Bank similarly argues that it is not liable for alleged personal theft by Casco Bay Cleaning because "Casco Bay Cleaning was not an employee of U.S. Bank but rather was an independent contractor." *Id.* at 12.

Finally, as to Count Twelve, which asserts the right to compensation for the value of improvements to the [P]roperty, U.S. Bank argues that Mr. Thomes' list of improvements fails to state a cognizable claim and further that it does not have to compensate Mr. Thomes for improvements to the property because "[a]ll of the improvements alleged by [Mr. Thomes] were made prior to [the] date" when U.S. Bank became a co-owner of the property. *Id.* at 12-13.

In U.S. Bank's second motion for summary judgment on equitable partition, U.S. Banks argues the facts establish that U.S. Bank and Mr. Thomes own the Property together, that the Property cannot be physically partitioned, and that U.S. Bank has no other adequate remedy. *Pl.'s Mot.* at 2-3. U.S. Bank requests "(1) an Order pursuant to 14. M.R.S. § 6051(7) for an equitable partition of the property; (2) an Order requiring the sale of the Property, payment of liens recorded against the Property based on priority, and the proceeds, if any, being divided between the parties in an equitable manner, as the Court deems just and appropriate; and (3) and an

14

Order that all charges and expenses incurred in connection with sale be apportioned equally between the parties." *Pl.'s Mot* at 3.

## B.   Theodore Thomes' Position

In response to U.S. Bank's two motions for summary judgment, Mr. Thomes provides the Court with a recitation of the facts of this case beginning in 2012, leading to U.S. Bank filing this action in federal court. *Counter Pl.'s Opp'n.* at 1-4.[9]   Mr. Thomes alleges that "[a]fter reviewing plaintiff's MEMORANDUM, 90 percent of CUMMINGS[10] memorandum is based on false statements." *Id.* at 4.   Mr. Thomes further argues that he, Ms. Thomes, and their daughter have had their civil rights violated and that there is evidence of "gross misconduct, perjured filings, personal property theft, false police reports, in exhibits entered in 3 courts over the last 14 YEARS of litigation." *Id.* at 6.   Mr. Thomes then identifies various parties who have allegedly violated his rights or committed criminal acts over the course of the litigation.   *Id.* at 6-7.   Mr. Thomes concludes by arguing that there are five factual issues in dispute: (1) that the deed description is defective; (2) that Plaintiff did not follow the rules of civil procedure; (3) that the Plaintiff is incorrectly named in the complaint; (4) that James Levis is incorrectly still listed as the attorney of record; and (5) that the Plaintiff was sold a fraudulent deed.   *Id.* at 8-10.

## C.   Donald P.  Penta's Position

Donald P. Penta also responded to U.S. Bank's motion for summary judgment on equitable partition.   *See Penta Resp.*   In his response, Mr. Penta argues three

---

[9]      To avoid confusion with page numbers, the Court refers to the ECF pagination.
[10]      The attorney for U.S. Bank is Daniel Cummings.

points.  First, Mr. Penta asserts that he holds "an existing execution lien upon any interest which Mr. Thomes holds in the property and the priority of that lien is based on a perfection date of August 20, 2012." *Id.* at 4.  Mr. Penta further contends that his lien has priority over Mr. Levis, who "consented to the entry of a judgment in favor of the Bank which does not provide for any payment to him outside of the proceeds of the partition and/or sale of the property which is subject to his mortgage." *Id.* at 5.

Second, Mr. Penta concedes that he "has no problem with the Bank retaining all charges and expenses it incurs in connection with any such sale from the proceeds of that sale, with the remaining proceeds net of those charges and expenses then being divided equally between the Bank and Mr. Penta."  *Id.* at 5-6.  However, Mr. Penta maintains that there is "no basis for making [him] personally liable for those charges and expenses, or any portion of them" because he "is not the owner of the Property, but, instead, is a lienholder and, outside of a partition action, would never be held personally liable for the costs of any sale of the Property."  *Id.* at 6.

Finally, Mr. Penta asserts that even if the Court denies U.S. Bank's motion for summary judgment on Mr. Thomes' counterclaims, "there is no valid or just reason why the efficacy and finality of any judgment awarded on the Partition [motion for summary judgment] should be delayed.  *Id.* at 7.  Ultimately, Mr. Penta requests that the Court:

> (A) Grant the Partition MSJ to the extent that it requests this Court to enter a judgment upon the Bank's Complaint ordering a sale of the Property; (B) Provide in that judgment that the reasonable costs of that sale be paid out of the resulting sale proceeds; (C) Provide in that

judgment that 50% of the net sale proceeds after paying the reasonable costs of that sale be paid to Mr. Penta upon his lien in the Property, with such Property to be released from that lien upon Mr. Penta's receipt of such payment; and (D) Provide in that judgment that there is no just reason for delay, with reasons given for the same, and that, therefore, the judgment will be final upon its entry in this case, as permitted by Fed. R. Civ. P. 54(b)."

*Id.* at 8.

### D.   U.S. Bank's Reply

U.S. Bank did not submit a reply to Mr. Penta but did reply to Mr. Thomes' opposition to its motions for summary judgment.  In reply, U.S. Bank makes two points.  First, it argues that Mr. Thomes waived his objection to the motions for summary judgment by failing to respond within twenty-one days under Local Rule 7(b).  *Reply Mem.* at 2.  Second, U.S. Bank contends that even if the Court did consider the merits of Mr. Thomes' motion, "[t]he Opposition contains absolutely no evidence of any nature and thus presents no facts that support [Mr. Thomes'] claims, much less any facts in dispute."  *Id.*  U.S. Bank notes that Mr. Thomes' motion does not comply with the Local Rules, and that, as such, U.S. Bank's facts are "deemed admitted" under Rule 56(f).  *Id.*

## IV.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'"  *Green Mountain*

*Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a court "views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V.  DISCUSSION

### A.  Motion for Summary Judgment on Theodore Thomes' Counterclaims

In its first motion, U.S. Bank moves for summary judgment on all twelve of Mr. Thomes' counterclaims.  The Court grants U.S. Bank's motions for summary judgment on all counterclaims because there are no genuine issues of material fact.

#### 1.  Count One

In Count One, Mr. Thomes alleges that he incurred damages when U.S. Bank executed a mortgage without his knowledge and failed to notify him that he would be tenants in common with the Bank.  U.S. Bank moves for summary judgment on this counterclaim asserting that "[t]here is no legal requirement that a co-owner be alerted by a mortgagee that the other co-owner is granting a mortgage on her interest in co-owned real estate." *Counter Def.'s Mot.* at 6.  Alternatively, U.S. Bank argues even if such a claim existed at the time the mortgage was accepted back in 2005 "the claim filed in 2019 was filed well after the applicable six year statute of limitations." *Id.*  Finally, U.S. Bank contends that Mr. Thomes' counterclaim qualified as a "compulsory counterclaim at the time U.S. Bank brought its foreclosure claim against [Ms. Thomes], which included an unjust enrichment claim against [Mr. Thomes]" which means that this counterclaim is now waived.  *Id.* at 6-7.  In response to U.S. Bank's motion, Mr. Thomes does not specifically explain why he believes the Court should deny the motion other than to make general allegations of abuse and criminal misconduct by U.S. Bank. *Counter Pl.'s Opp'n* at 1-5.

Under Maine law there is no requirement that a mortgagee inform the mortgagor's co-tenant that they are granting a mortgage on a mortgagor's interest. While the Law Court has not expressed this explicitly, it has never recognized this cause of action in factually similarly cases. *See e.g.*, *Schaefer v. Peoples Heritage Sav. Bank*, 669 A.2d 185, 186 (Me. 1996) (affirming a mortgagee's right to sever a joint tenancy upon foreclosure where one joint tenant neither executed nor authorized the issuance of a mortgage). The Law Court has, however, held that a third person harvesting a property's natural resources need not obtain consent from all joint tenants and that any disagreement as to consent is more appropriately resolved among the joint tenants than against the third party. *Kapler v. Kapler*, 2000 ME 131, ¶¶ 17-19, 755 A.2d 502, 508-09. ("[14 M.R.S. § 7505] was intended to provide a cause of action directly between co-owners and to avoid suits such as this which allow a co-owner to sue an innocent agent who relied on the authority of another co-owner").

When viewing the record in the light most favorable to Mr. Thomes, there is no evidence that U.S. Bank harmed Mr. Thomes in a legally redressable manner. Even assuming that Mr. Thomes alleges a legally cognizable cause of action (and the Court does not conclude he does), Mr. Thomes has not offered specific facts that withstand summary judgment. The only related fact offered on the record, which Mr. Thomes does not dispute, is that he and Ms. Thomes were joint tenants. CPSMF ¶ 1. Beyond this, however, Mr. Thomes offers no facts supporting his claim that he did not know about the mortgage. Moreover, of the additional facts that Mr. Thomes provides, none is supported by appropriate record citations and therefore the Court

cannot consider them. *See* CPSMF ¶ 1. Even viewing properly contested facts in the light most favorable to Mr. Thomes, the Court does not find that there are any genuine issues of material facts between U.S. Bank and Mr. Thomes and therefore, the Court grants U.S. Bank's motion for summary judgment as to Count One.

### 2. Count Two

In Count Two, Mr. Thomes argues that U.S. Bank exerted undue influence over him and Ms. Thomes. U.S. Bank moves for summary judgment on Count Two and asserts that Mr. Thomes (1) fails to state a claim on which relief can be granted; (2) presents a claim that exceeds the statute of limitations under 14 M.R.S. § 752; and (3) presents an impermissible compulsory counterclaim that should have been brought in 2005 in response to the original litigation. *Counter Def.'s Mot.* at 7.

In Maine, the Law Court has adopted the Restatement (Second) of Contract's definition of "undue influence." *See Russo v. Miller*, 559 A.2d 354, 358 (Me. 1989). "[U]ndue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." *Id.* (quoting Restatement (Second) of Contracts § 177 (Am. Law Inst. 1981)).

Here, Mr. Thomes has not stated any facts on the record, with appropriate citations, alleging that U.S. Bank exerted undue influence. Mr. Thomes does not provide facts showing any special relationship with U.S. Bank nor that there was any unfair persuasion by U.S. Bank. Additionally, Mr. Thomes fails to address U.S. Bank's assertion that the statute of limitations has run on any such counterclaim under 14 M.R.S. § 752 and U.S. Bank's contention that he waived this compulsory

counterclaim when he failed to raise it in the 2005 litigation.  *Counter Def.'s Mot.* at 7.  Because Mr. Thomes has not properly asserted any facts of his own, the Court is left only with U.S. Bank's statements of material fact.  These facts raise no genuine dispute as to whether U.S. Bank exerted undue influence over Mr. Thomes or Ms. Thomes.  The Court therefore grants U.S. Bank's motion for summary judgment as to Count Two.

### 3.    Count Three

In Count Three, Mr. Thomes alleges that U.S. Bank refused to allow Mr. Thomes to purchase the Bank's interest in the Property for the fair market value.  On summary judgment U.S. Bank argues that Mr. Thomes has not stated a cognizable claim and that he never sought to redeem Ms. Thomes' Property under the Maine foreclosure statute.  *Counter Def.'s Mot.* at 7-8.  Mr. Thomes did not specifically respond to U.S. Bank's arguments on Count Three.  *See Counter Pl.'s Opp'n* at 1-5.

Mr. Thomes has presented no authority for his proposition that under Maine law a co-tenant must sell its one-half interest in a co-tenancy to its co-tenant.  Indeed, such a limitation would be inconsistent with the Law Court's "general policy favoring the free alienability of property."  *O'Donovan v. McIntosh*, 1999 ME 71, ¶ 10, 728 A.2d 681, 684.  As U.S. Bank notes, redemption provided Mr. Thomes with a means of recovering the Property in the foreclosure proceeding.  *Countercl. Def.'s Mot.* at 7-8.  The statute permits a "mortgagor or the mortgagor's successors, heirs or assigns" to redeem the mortgage within ninety days of the judgment of foreclosure.  *Id.* (quoting 14 M.R.S. § 6323).  There is nothing in the statute that precluded Mr. Thomes from redeeming the mortgage on Ms. Thomes' behalf.  In fact, under Maine law, Mr.

Thomes had the right to redeem the mortgage, had he chosen to do so. *Liberty v. Pooler*, 134 Me. 115, 182 A. 216, 127 (1939) ("Anyone who has an interest in mortgaged premises, and who would be a loser by foreclosure, is entitled to redeem").

As with Counts One and Two, Mr. Thomes offers no probative evidence, with appropriate citations, to support his allegations against U.S. Bank. For the purposes of summary judgment, the record shows that neither Ms. Thomes nor Mr. Thomes, acting on her behalf or for himself, redeemed the Property before the redemption period expired. CDSMF ¶ 3-4. Even if Mr. Thomes had followed the Local Rules by appropriately contesting U.S. Bank's statement of fact, Mr. Thomes only asserts that "Cummings states Renee Thomes right to redeem expired on 6/21/18. NOT TRUE." CPSMF ¶ 3. Even when viewed in the light most favorable to Mr. Thomes, this unsupported statement raises no genuine dispute as to any material fact as to whether Mr. Thomes sought to redeem the Property. U.S. Bank is thus entitled to summary judgment on Count Three.

### 4. Count Four

In Count Four, Mr. Thomes alleges that he incurred thousands of dollars in legal costs when U.S Bank executed a mortgage on only half of the Property. U.S. Bank moves for summary judgment on Count Four, arguing that it is "nothing more than a réchauffé[11] of Counts 1 and 2; and for the same reasons stated above, U.S. Bank is entitled to judgment on this claim." *Counter Def.'s Mot.* at 8.

---

[11]  Although used in English, the word, réchauffé comes from French. Chauffer is the French verb to heat and réchauffé means a warmed-over dish of food, sometimes by extension a stale argument.

There is nothing under Maine law that prevents a mortgagee from accepting a mortgage on a one-half interest in property.  *See e.g.*, *United Carolina Bank v. Beesley*, 663 A.2d 574, 575 (Me. 1995) (involving a case where joint tenants executed a mortgage on their one-half interest in property); *Thomes*, 2013 ME 60, ¶¶ 13-18, 69 A.3d 411, 415-16 (making no suggestion that it is impermissible under Maine law for a mortgagor to encumber only half of a property).

As with the previous claims, Mr. Thomes not only fails to state a valid cause of action under Maine law but also fails to allege any facts that raise any genuine dispute as to any material facts in this case.  The Court therefore grants U.S. Bank's motion for summary judgment as to Count Four.

### 5.    Count Five

In Count Five, Mr. Thomes alleges that U.S. Bank ruined his credit rating and reputation when it published his name in the foreclosure proceedings and public auction notice.  On summary judgment U.S. Bank argues that "[n]aming [Mr. Thomes] in the foreclosure and publishing the notice of sale were required under the applicable statute."  *Counter Def.'s Mot.* at 8 (citing 14 M.R.S. §§ 6321, 6323).  U.S. Bank further argues that because the publication of Mr. Thomes' name was required as part of foreclosure proceedings, "such action is subject to the absolute litigation privilege." *Id*.  This privilege extends to "relevant communications and testimony made preliminary to and in the course of litigation." *Counter Def.'s Mot.* at 8-9.

Section 6321 provides that a mortgagee who is claiming a breach of a mortgage may "proceed for the purpose of foreclosure by civil action against all parties in interest." 14 M.R.S. § 6321.  Although the statute does not define "parties in interest,"

as this Court earlier noted, Mr. Thomes as a co-tenant had the right under Maine law to redeem the mortgage. In *United States Department of Housing & Urban Development v. Union Mortgage Co.*, 661 A.2d 163 (Me. 1995), the Maine Supreme Judicial Court commented that one of the purposes of naming parties in interest in a foreclosure civil action is to assure they have "a means to determine when the public sale would occur" and to enable the party in interest "to protect its interest by attending the sale." *Id.* at 166. As a person whose interest in the property entitled him to redeem the mortgage, the Court views Mr. Thomes as an appropriate party in interest within a commonsense definition of the statutory term. His inclusion therefore was proper and does not provide a basis for his civil claim against U.S. Bank.

Moreover, the Law Court recognizes that statements made in pleadings and by attorneys during judicial proceedings are privileged if the statements are relevant to the proceedings. *Dineen v. Daughan*, 381 A.2d 663, 664-665 (Me. 1978); *Perry v. Alexander*, 2:15-cv-00310-JCN, 2017 U.S. Dist. LEXIS 110193, at * 2 (D. Me. July 17, 2017). Statements cannot be used as an "opportunity to defame because the privilege is only available when the challenged remarks are pertinent to the judicial proceeding." *Perry*, 2017 U.S. Dist. LEXIS 110792, at *2 (quoting *Simon v. Navon*, 951 F. Supp. 279, 282 (D. Me. 1997)); *see also* Restatement (Second) of Torts § 587 (Am. Law Inst. 1977) ("[a] party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to the proposed judicial proceeding, or in the institution of or during the course and as a

part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding").   Relevant to Mr. Thomes' counterclaim, Maine's foreclosure statute requires that the mortgagee publish notice of the foreclosure sale "in a newspaper of general circulation in the county" where the property is located.   14 M.R.S. § 6323(1).

The only relevant evidence on the record is that U.S. Bank held a foreclosure sale on August 14, 2018.   CDSMF ¶ 5.   Again, Mr. Thomes does not properly contest this statement in accordance with the Local Rules and only asserts that "Cummings states that US BANK is foreclosing MORTGAGEE held a foreclosure sale.   AGAIN false."   CPSMF ¶ 5.   Mr. Thomes does not cite any evidence supporting this statement and thus the Court may not consider the statement under the Local Rules.   However, even if Mr. Thomes had appropriately supported this assertion, the statement does not raise any genuine issue as to whether U.S. Bank harmed Mr. Thomes by publishing his name pursuant to Maine's foreclosure statute.   Mr. Thomes does not argue that the litigation privilege does not apply nor raise any evidence showing that U.S. Bank was not otherwise entitled to publish Mr. Thomes' name as a foreclosure requirement.   The Court grants summary judgment in favor of U.S. Bank as to Count Five.

### 6.      Count Six

In Count Six, Mr. Thomes argues that U.S. Bank engaged in "malicious abuse of legal process."   U.S. Bank moves for summary judgment arguing that Mr. Thomes has not shown the required elements for an abuse of process claim.

Some states have adopted the merged tort of "malicious abuse of process." *See e.g.*, *Durham v. Guest*, 204 P.3d 19 (N.M. 2009).  However, Maine treats abuse of process and malicious prosecution as two distinct causes of action.  *See Pepperell Tr. Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 16, 708 A.2d 651, 655-56.  To establish abuse of process, a plaintiff must allege that Defendant has an "ulterior motive" and uses "process in a manner improper in the regular conduct of the proceeding." *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 7, 708 A.2d 283, 286.  To establish malicious prosecution, a plaintiff must prove the following elements: "(1) The defendant initiated, procured or continued a criminal action without probable cause; (2) The defendant acted with malice; and (3) The plaintiff received a favorable termination of the proceedings." *Trask v. Devlin*, 2002 ME 10, ¶ 11, 788 A.2d 179, 182 (quoting *Davis v. Currier*, 1997 ME 199, ¶ 4, 704 A.2d 1207, 1208-09).

To avoid summary judgment, Mr. Thomes must show that U.S. Bank either: (1) improperly used a legal proceeding and had an ulterior motive for doing so, to establish abuse of process, or (2) initiated a criminal action, acted with malice, and that Mr. Thomes received a favorable end to the proceedings, to establish malicious prosecution.  Based on the record, there are no facts supporting either of these two potential causes of action.  Mr. Thomes has not proffered any probative evidence showing any elements of either abuse of process or malicious prosecution.

While Mr. Thomes asserts discrimination, perjury, and abuse in his motion, *Counter Pl.'s Opp'n* at 1-5, he has not cited to any specific, admissible evidence that would allow the Court to consider these statements as part of the summary judgment

record. Moreover, these statements are argumentative and lack support and thus cannot be considered on summary judgment. Because there is no dispute as to any material fact, the Court grants U.S. Bank's motion for summary judgment as to Count Six.

### 7.    Count Eight[12]

In Count Eight, Mr. Thomes alleges that U.S. Bank harmed him by paying grossly inadequate consideration to Ms. Thomes upon the public sale of her interest. On summary judgment, U.S. Bank first argues that Mr. Thomes "had no interest in [Ms. Thomes'] interest, which may be freely alienated without [his] approval or involvement." *Counter Def.'s Mot.* at 10. Second, U.S. Bank states that it "sold the Property at a foreclosure sale in accordance with the requirements of Maine law; and accordingly, the price obtained is deemed to be sufficient." *Id.*

As with his previous counterclaims, Mr. Thomes' eighth counterclaim fails. First, Mr. Thomes has failed to establish any basis upon which he has standing to complain about whether the Bank paid adequate compensation to his wife. If such a claim exists, it is hers, not his.

Second, even if Mr. Thomes could bring such a claim, it must fail. The only pertinent fact on the record is that U.S. Bank conducted a foreclosure sale. CDSMF ¶¶ 5-6. Mr. Thomes has not properly contested this fact or alleged any facts of his own indicating that the foreclosure sale was conducted improperly or not in

---

[12]    The Court does not address Count Seven, as it previously granted U.S. Bank's motion to dismiss Ms. Thomes' counterclaims. *See Order Affirming the Recommended Decision of the Magistrate Judge* at 3.

accordance with Maine law. Additionally, given that this was a foreclosure sale, Mr. Thomes has not provided any evidence that would allow the Court to find that he or Ms. Thomes were owed any surplus money on the sale of the Property. Given this dearth of facts, there is no dispute as to any material fact surrounding whether U.S. Bank conducted the foreclosure sale in accordance with Maine law. The Court grants summary judgments as to Count Eight.

### 8.   Count Nine

In Count Nine, Mr. Thomes argues that U.S. Bank exercised exclusive possession of the Property before the court issued the final Foreclosure Judgment. On summary judgment, U.S. Bank argues that this "allegation is patently false" and that Mr. Thomes' "claim fails to state any claim or resulting damages." *Counter Def.'s Mot.* at 10. U.S. Bank further argues that based on the language of the Foreclosure Judgment, which states that "Plaintiff is granted exclusive possession of the real estate mortgaged to it upon expiration of the statutory 90 day redemption period," it was entitled to possession of the property on June 22, 2018, the day after the redemption period expired, extinguishing Ms. Thomes' interest in the Property. *Id.* at 10-11.

Viewing the evidence in the light most favorable to Mr. Thomes, there is no evidence that U.S. Bank came into possession of the Property before it was statutorily entitled to.[13] Mr. Thomes does not contest U.S. Bank's statement of fact that it was

---

[13]    According to the record, U.S. Bank was entitled to possession of the Property on June 22, 2018, after the close of the redemption period, but did not actually take possession until August 23, which was after the foreclosure sale was held on August 14. It was not until November 14, 2018, that U.S.

entitled to possession of the properly on June 22, 2018, pursuant to the language of the Foreclosure Judgment.  Indeed, Mr. Thomes fails to assert any facts contesting that U.S. Bank was entitled to possession after the close of the redemption period. [14] *See* CDSMF ¶ 4; *see e.g.*, *Peoples Heritage Sav. Bank v. Demers*, No. CV-95-25, 1995 Me. Super LEXIS 157, at *3 (Apr. 26, 1995) ("Plaintiff is entitled, after the redemption period expires, at is option, to take exclusive possession of the real estate described in Plaintiff's Mortgage").  Given that Mr. Thomes does not dispute that U.S. Bank was entitled to possession upon the close of the redemption period, the Court accepts U.S. Bank's facts.  Thus, there is no dispute as to any material fact regarding U.S. Bank's initial possession of the Property and U.S. Bank is entitled to summary judgment on Count Nine.

### 9.   Count Ten

In Count Ten, Mr. Thomes asserts that the Property declined in value after U.S. Bank took possession on August 23, 2018, and that U.S. Bank's property management company caused damage through "willful neglect."  U.S. Bank argues on summary judgment that "[a]ny allegations that purported 'agents' entered the

---

Bank received the deed of foreclosure as the highest bidder at the foreclosure sale.  That U.S. Bank continued to have possession of the Property after the sale on August 14, but before the Bank received the foreclosure deed on November 14 is not an issue.  Under section 6323, Ms. Thomes' "remaining rights . . . to possession terminate[d]" when the redemption period ended on June 21, 2018, and transferred to U.S. Bank under the Foreclosure Judgment.  *See* 14 M.R.S. § 14(1).  There is nothing to suggest that those rights were reinstated after the foreclosure sale took place but before the deed was transferred to U.S. Bank at the foreclosure sale.  Had a third party purchased the property at the foreclosure sale, U.S. Bank would have still been entitled to possession of the Property prior to the third party receiving the foreclosure deed or taking possession pursuant to the sale.  The outcome is no different when U.S. Bank is the buyer at the foreclosure sale.

[14]     As discussed in footnote 6, Mr. Thomes disputes the correct date when the redemption period ended.  However, Mr. Thomes' counterclaim is not saved even when using Mr. Thomes' date of May 20, 2018.

property or caused damage are barred because such entities were independent contractors. . .. In addition, the law imposed no duty on U.S. Bank to maintain [Mr. Thomes'] interest in the Property," and thus they could not be liable if there was any decline in value. *Counter Def.'s Mot.* at 11.

Under Maine law an "employer may be vicariously liable for the negligence of its employees, but not for the negligence of independent contractors." *Legassie v. Bangor Publ. Co.*, 1999 ME 180, ¶ 5, 741 A.2d 442, 444; *Rainey v. Langen*, 2010 ME 56, ¶ 14, 998 A.2d 342, 346 ("[A] prerequisite to imposing vicarious liability is the existence of an employer-employee relationship"). The Law Court looks to the supervisor's degree of control—including their right to employ, discharge, and direct the details of work—to determine whether a party is an employer or independent contractors. *Legassie*, 1999 ME 180, ¶ 6, 741 A.2d at 444.

With respect to co-tenants' rights and duties, a co-tenant may not occupy a part of the jointly owned property at the exclusion of the other co-tenant, nor may a co-tenant make changes that are "injurious or detrimental to the rights to cotenants." *Uzdavinis v. Wagemann*, No. CV-15-027, 2017 Me. Super. LEXIS 112 at *6-7 (June 21, 2017) (citing 86 C.J.S. *Tenancy in Common* § 78b).

As with the other claims, Mr. Thomes' lack of material facts and failure to address the issues raised by U.S. Bank are fatal to his counterclaim. Mr. Thomes has not alleged any evidence that U.S. Bank's property manager was operating as an employee whose tortious conduct could be imputed to the Bank. Furthermore, there are no facts in the record that U.S. Bank otherwise acted in a way that was injurious

31

or detrimental to Mr. Thomes.  Finally, Mr. Thomes fails to present evidence of the Property's value before U.S. Bank became co-owner to ground his assertion of a decline in value.  Because Mr. Thomes has not alleged any facts in accordance with the Local Rules that would allow the Court to conclude that U.S. Bank engaged in illegal or tortious conduct decreasing the value of the property (even when viewed in the light most favorable to Mr. Thomes), the Court grants summary judgment in favor of U.S. Bank on Count Ten.

### 10.    Count Eleven

In Count Eleven, Mr. Thomes asserts that U.S. Bank is liable for theft of personal property by U.S. Bank's alleged agent, Casco Bay Cleaning.  U.S. Bank argues on summary judgment that U.S. Bank is not liable for any theft by Casco Bay Cleaning, because the company was acting as an independent contractor—not an agent—of U.S. Bank.  *Counter Def.'s Motion* at 12.

Applying the same vicarious liability standard discussed in Count Ten, the facts before the Court do not support Ms. Thomes' assertion that U.S. Bank is liable for thefts by Casco Bay Cleaning.  Mr. Thomes does not add any facts to the record and fails to adequately address U.S. Bank's arguments regarding liability in his motion in opposition to summary judgment.  While Mr. Thomes references "personal property theft" in his memorandum of law, he does not address whether Casco Bay Cleaners was an "employee" or "independent contractor" nor does he explain the degree of control exerted by U.S. Bank over Casco Bay Cleaners.  The record before the Court fails to establish that there is a genuine dispute as to any material fact on

this issue.  The Court grants summary judgment in favor of U.S. Bank on Count Eleven.

### 11.    Count Twelve

In Mr. Thomes' final counterclaim he argues he is owed compensation for improvements to the home since it was last appraised.  In its motion for summary judgment, U.S. Bank cites several Law Court cases and argues that "[a]ny claim for reimbursement for putative improvements must establish that such improvements were made to the Property while U.S. Bank was a co-owner with [Mr. Thomes]." *Counter Def.'s Mot.* at 12.  U.S. Bank asserts that it "became a co-owner with Thomes on November 14, 2018, when it received the deed to [Ms. Thomes'] interest" and that "[a]ll of the improvements alleged . . . were made prior to that date." *Id.* at 13.

During a partition action, the court will consider "all equities growing out of [the joint-tenancy] relationship." *Ackerman v. Hojnowski*, 2002 ME 147, ¶ 11, 804 A.2d 412, 415.  If a co-tenant makes improvements to a jointly owned property, courts will "generally award that cotenant the resulting increase in the value of the estate, and not the actual cost of the improvements" upon partition of the property.  *Palanza v. Lufkin*, 2002 ME 143, ¶ 11, 804 A.2d 1141, 1145.  However, "[c]ontributions of the parties to the property prior to the joint tenancy . . . are not equities growing out of the joint tenancy relationship." *Boulette v. Boulette*, 627 A.2d 1017, 1018 (Me. 1993).  Considering contributions made before the joint tenancy is established "defeat[s] joint ownership." *Id.*

Here, U.S. Bank states that the improvements that Mr. Thomes' claims were made to the Property were done prior to August 14, 2018, the date of the foreclosure

sale.  CDSMF ¶ 7.  Mr. Thomes does not contest this statement of material fact.  *See* CPSMF.  The Court therefore admits this statement as true under the Local Rules. Because all improvements were done prior to August 14, 2018, which was before the Bank took possession on August 23, 2018, pursuant to the Foreclosure Judgment, and before the Bank took ownership of the Property pursuant to the foreclosure deed on November 14, the Court cannot consider these improvements in any action for partition.  *See Boulette*, 627 A.2d at 1018.  Mr. Thomes has not raised a genuine issue of material fact as to when the improvements occurred.  The Court therefore grants U.S. Bank's motion for summary judgment as to Count Twelve.

Ultimately, the Court grants U.S. Bank's motion for summary judgment on all counterclaims.

## B.   Motion for Summary Judgment on U.S. Bank's Claim for Equitable Partition

In its second motion, U.S. Bank moves for summary judgment on its partition action.  Citing Maine law on equitable partition, U.S. Bank argues that "(1) the parties are common owners of the Property; (2) the Property is not capable of physical partition; (3) U.S. Bank has no plain, complete and adequate remedy at law; and (4) U.S. Bank has the right to an order of partition of the Property.  Because no genuine issue of material fact exists with regard to the *Complaint* filed against Thomes, U.S. Bank is entitled to summary judgment under F.R. Civ. P. 56, and are entitled to equitable partition by sale of the Property and division of the proceeds of the sale, after payment of the liens recorded against the property."  *Pl.'s Mot.* at 3 (internal citations omitted).  In his response, Mr. Thomes does not specifically address U.S.

Bank's motion for summary judgment as to the partition action, nor does Mr. Thomes

contest any of U.S. Bank's material facts.  *See Counter Pls' Opp'n* at 1-5; CPSMF.

### 1.    Partition Actions under Maine Law

Maine law provides for two types of partition: (1) statutory "partition by

petition," which "may be carried out only by physical division of the jointly owned real

estate or . . . by a time-sharing of its use," *Libby v. Lorrain*, 430 A.2d 37, 38-39 (Me.

1981); and (2) "equitable partition," which is "not limited to a physical division and

may be carried out by sale."  *Id.* at 39; *see also* 14 M.R.S. § 6051(7) (stating that the

Superior Court has jurisdiction to grant equitable relief "[i]n the case of . . . part

owners . . . of other real and personal property to adjust all matters of the partnership

and between such part owners, compel contribution, make final decrees and enforce

their decrees by proper process in cases where all interested persons within the

jurisdiction of the court are made parties").  "The equity court will order sale and

division of the proceeds where physical division is impractical or would materially

injure the rights of the parties."  *Libby*, 430 A.2d at 39*; see also Boyer v. Boyer*, 1999

ME 128, ¶¶ 7-8, 736 A.2d 273, 276.  "Equitable partition actions necessarily require

a trial court to weigh the competing interests of common landowners." *Withee v.

Garnett*, 1998 ME 30, ¶ 4, 705 A.2d 1119, 1120.  When determining the division of

proceeds, the Court "must consider all equities arising out of the joint ownership."

*Clark v. Leblanc*, No. RE-12-393, 2013 Me. Super. LEXIS 124, at *5 (July 18, 2013)

(citing *Ackerman*, 2002 ME 147, ¶ 11, 804 A.2d 412).

Here, U.S. Bank seeks equitable, rather than statutory, partition.  *Pl.'s Mot.*

at 1.  Based on the material facts on the record, U.S. Bank and Mr. Thomes are

tenants in common, PSMF ¶ 1.  Furthermore, the Property is not capable of physical partition, PSMF ¶ 2, nor does U.S. Bank have any other adequate remedy at law. PSMF ¶ 3.  Based on the facts in the record there is no genuine dispute as to any material fact.  Mr. Thomes' failure to properly contest any of U.S. Bank's material facts means that they are admitted for the purposes of summary judgment under the Local Rules.  According to these facts, U.S. Bank meets the requirements of joint ownership, and demonstrates that statutory partition is impractical or would materially injure the parties.  Because there is no genuine dispute as to any of these material facts, the Court grants U.S. Bank's motion for summary judgment as to its equitable partition action.

### C.    Equitable Partition Judgment

Finally, the Court must craft a partition judgment and determine how best to equitably distribute any proceeds of the sale.  Given that U.S. Bank has not yet replied to Mr. Penta's concerns and suggestions as to the distribution of profits and payment of costs, *see Penta Resp.* at 5-6, the Court orders U.S. Bank set forth its position on how the costs of the sale should be distributed and how profits of the sale should be allocated, if there are any.  The Court further orders U.S. Bank to prepare a proposed judgment detailing the practical relief requested, the timing of the sale, and the details of how the sale is to be conducted.

## VI.    CONCLUSION

The Court GRANTS U.S. Bank's motion for summary judgment on all twelve counts of Mr. Thomes' counterclaims (ECF No.77) and GRANTS U.S. Bank's motion for summary judgment as to equitable partition (ECF No. 79).  The Court ORDERS

U.S. Bank to address its position on the distribution of profits and payment of sale costs, and prepare a proposed judgment detailing the practical relief requested, including the proposed timing of the sale and whether the sale should be public. The Court ORDERS U.S. Bank to respond within fourteen days.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of September, 2021