UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for Specialty Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2006-BC2,<br><br>      Plaintiff,<br><br>  v.<br><br>THEODORE W. THOMES, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 2:19-cv-00477-JAW<br>)<br>)<br>)<br>) |

**ORDER ON PROPOSED EQUITABLE PARTITION ORDER**

In this order in a partition action, the Court approves a proposed order for public sale of real estate pursuant to 28 U.S.C. § 2001 over the objections of a tenant-in-common.

**I.    BACKGROUND**

On September 22, 2021, the Court granted U.S. Bank National Association, as Trustee for Special Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificates Series 2006-BC2's (U.S. Bank) motion for summary judgment in its complaint for equitable partition. *Order on Pending Mots. for Summ. J.* (ECF No. 100) (*Summ. J. Order*). In its order, the Court ordered U.S. Bank to "address its position on the distribution of profits and payment of sale costs" and to "prepare a proposed judgment detailing the practical relief requested, including the proposed timing of the sale and whether the sale should be public." *Id.* at 36-37.

Following the September 22, 2021, order, U.S. Bank filed a proposed order on October 6, 2021. *Equitable Partition Order* (ECF No. 101). On October 7, 2021, the Court issued an order, notifying Theodore W. Thomes, S. James Levis, Jr., and Donald P. Penta that they had the right to object to the proposed judgment and, if they wished to file an objection, it must be filed by October 29, 2021. *Order* (ECF No. 102). Theodore W. Thomes responded to the proposed order on October 29, 2021. *Resp. to Proposed Order* (ECF No. 103) (*Oct. Obj.*).

On November 1, 2021, Mr. Levis filed a motion to be removed as a potential payee of the sale proceeds. *Mot. of Def. S. James Levis to Remove S. James Levis as a Potential Payee of Funds out of Sale of Property and Waiver of Cl. to Proceeds* (ECF No. 104). Mr. Levis asked that he be removed from the equitable partition order. *Id.* at 1. On November 2, 2021, U.S. Bank filed a second proposed order, removing S. James Levis from his priority payment position. *Equitable Partition Order* at 3 (ECF No. 105). Then on November 3, 2021, U.S. Bank filed a third proposed order, correcting its designation from a motion to a proposed order. *Equitable Partition Order* (ECF No. 106) (*Third Order*). Any objection to the proposed order from Mr. Thomes and Mr. Penta, the two remaining interested parties, was due by November 24, 2021. On December 6, 2021, Mr. Thomes filed a response to the proposed order. *Resp. to Mot. on Pending Order* (ECF No. 107) (*Dec. Obj.*). Mr. Penta has not filed an objection.

## II.   THE PARTIES' POSITIONS

### A.   U.S. Bank's Proposed Order

U.S. Bank's proposed Equitable Partition Order describes how the property at 135 Smith Road, Windham, Maine will be sold consistent with this Court's September 22, 2021 summary judgment order. *Third Order* at 1-4. The proposed order contains the following salient features:

1) The property at 135 Smith Road, Windham, Maine, will be placed on the market immediately for sale;

2) U.S. Bank would select and retain a licensed real estate broker to list the property for sale under a 60-day listing agreement and a 5% commission;

3) The listing agreement would be renewable for 60-day periods upon motion by U.S. Bank;

4) The property shall be sold "as is/where is" and will not be subject to an inspection contingency;

5) The listing real estate broker will recommend a listing price and if it is reasonable, the property will be placed on the market for sale at that price;

6) The Court would appoint James G. Spaulding, Esq. (the attorney for U.S. Bank) to execute all documents necessary to effectuate the sale;

7) Attorney Spaulding may not accept any offer without the consent of U.S. Bank or its servicer;

8) After the property is placed on the market for sale and before confirmation of the sale, the Court will appoint three disinterested persons to appraise the property;

9) The Court may not confirm any sale at a price less than two-thirds of the lowest appraised price;

10) Once Attorney Spaulding accepts an offer, he must advertise the property in the Portland Press Herald and if he receives an offer within ten days of publication that guarantees a price at least ten percent higher than the original price, Attorney Spaulding must request the court confirm the new offer within three business days;

11) Upon court confirmation, the closing on the sale of the property will take place within a commercially reasonable period of time;

12) After the sale, U.S. Bank will hold the proceeds in escrow pending Court approval of a Report of Sale;

13) After deducting all closing costs, the proceeds will be distributed: ½ to U.S. Bank and ½ to Theodore Thomes.  However, before any surplus proceeds are paid to Mr. Thomes, Donald P. Penta will be paid pursuant to a recorded Writ of Execution;

14) Once a Report of Sale has been prepared, the parties will have fourteen days to filed objections to it.

*Id.*

B.    **Theodore W. Thomes' Objection**

1.    **Theodore W. Thomes' October 29, 2021, Objection**

In his October 29, 2021 objection, Mr. Thomes raised the following objections to the proposed order:

1) The property description is not correct;

2) U.S. Bank failed in its objection to preserve the value of the home;

3) U.S. Bank acted "criminally" to remove Mr. Thomes' property manager and prevented the maintenance and inspection to preserve its value;

4) Renee Thomes, Mr. Thomes' wife, was forced to plead guilty to a bogus firearms charge in the United States District Court for the District of Maine;

5) Mr. Thomes demanded an equitable partition in 2019, which the Court ignored, and now has granted U.S. Bank's demand for equitable partition when the property has lost value;

6) Mr. Thomes demands input into the selection of the realtor;

7) Donald Penta's lien is not valid;[1]

8) U.S. Bank and Mr. Thomes arrived at a settlement agreement;

9) The only person who is authorized to act for U.S. Bank is Dan Cummings;

10) The Court does not follow its own rules because the Magistrate Judge has the "complete capacity to litigate and rule in any case;"

---

[1] Mr. Thomes makes several allegations concerning S. James Levis, but as Mr. Levis has disclaimed any interest in the property, the Court will not repeat them.

11) U.S. Bank improperly charged monthly inspection fees;

12) U.S. Bank has not permitted Mr. Thomes to enter into his own property to remove his personal possessions;

13) The Court and counsel have never bought, sold, or listed a property because the idea of listing the property and then having it appraised is "completely ridiculous;"

14) There should be a survey of the property before sale; and

15) U.S. Bank and the attorney for Donald Penta violated an order of the Maine Supreme Judicial Court.[2]

*Oct. Obj.* at 1-5.

### 2. Theodore W. Thomes' December 6, 2021 Objection

In his December 6, 2021 objection, Mr. Thomes raised the following:

1) The Maine Supreme Judicial Court remanded a case to U.S. Bank to file an equitable partition in Maine Superior Court, noting that any public sale by U.S. Bank would harm Mr. Thomes;

2) U.S. Bank does not have the authority to bring this partition action;

3) On November 13, 2021, Justice Thomas R. McKeon of the Cumberland County Superior Court heard a restitution action filed by Mr. Thomes;

4) U.S. Bank charged for home inspections that were never done;

---

[2] In addition, Mr. Thomes makes several inflammatory allegations against several individuals that do not bear repetition here. *Oct. Obj.* at 4-5.

5) Mr. Thomes will agree to purchase the property for $60,000 with $30,000 going to U.S. Bank and $30,000 going to the lienholder, and Mr. Thomes receiving clear title;

6) Mr. Thomes will agree to a sale of his home on the following terms: (a) U.S. Bank must restore the property to the condition it was in when the mortgage was executed, (b) he is allowed to inspect the home with a private structural engineer and correct any deficiencies, (c) he is allowed to remove his personal property from the home, (d) the town of Windham building inspector will provide documentation of any code deficiencies, (e) U.S. Bank will perform a survey of the property and provide a corrective deed, (f) as a sale during the winter months would be detrimental to its value, the property not be placed on the market until spring, (g) Mr. Thomes selects the realtor, (g) U.S. Bank's fees from its mortgage foreclosure not be deducted from the proceeds, (h) $26,000 be deducted from sale proceeds for Mr. Thomes' personal property taken by U.S. Bank, (i) Donald Penta's lien be dishonored because he failed to renew it, and (j) U.S. Bank receive only 50% of the value of its original mortgage or $110,000 minus Mr. Thomes' legal fees and personal property loss.

*Dec. Obj.* at 1-10.

## III.   DISCUSSION

To begin, the Court is concerned that Mr. Thomes does not understand what is before this Court and what is not. The status of U.S. Bank's title to one-half interest

in the property located at 135 Smith Road, Windham, Maine, is not before this Court. In its Complaint and in its motion for summary judgment, U.S. Bank alleged that it foreclosed upon 135 Smith Road and obtained title to a one-half interest in the property by virtue of a public sale on August 14, 2018. *Compl.* ¶¶ 7-9 (ECF No. 1); *Summ. J. Order* at 9-11. U.S. Bank and Mr. Thomes then became owners as tenants-in-common in the property. *Compl.* ¶¶ 7-9; *Summ. J. Order* at 11.

The lawsuit before this Court is only a partition action.[3] *See Compl.* Mr. Thomes' allegations against the legality of the foreclosure and U.S. Bank's right to bring this partition action are not now before the Court. On September 22, 2021, based on the record, the Court granted U.S. Bank's motion for summary judgment and the only question before the Court now is the proposed sale of the property at 135 Smith Road.[4] Once summary judgment was granted, the only remaining issue before

---

[3]     In his October 2021 objection, Mr. Thomes claims that the Court failed to follow its own rules when it took responsibility for the partition action from Magistrate Judge John Nivison. *Oct. Obj.* at 2. Mr. Thomes is wrong. Under federal statute, a magistrate judge does not have the authority to preside over dispositive matters, except by the consent of all the parties. 28 U.S.C. § 636. As all the parties did not consent to the magistrate judge conducting the proceedings in this case, the case was assigned in the ordinary course to a United States District Judge.

[4]     In his October 2021 objection, Mr. Thomes alleged that a "bogus" criminal action was initiated in the United States District Court for the District of Maine against his wife and that she was forced to plead guilty to this charge. *Oct. Obj.* at 1. Although not technically before this Court in this civil action, this Court's docket reflects that on October 1, 2014, a Renee Thomes waived indictment and pleaded guilty to a federal criminal charge of Transfer, Sale and Delivery of Firearms to Out of State Residents, a violation of 18 U.S.C. § 922(a)(5). *See United States v. Renee Thomes*, 2:14-cr-00112-DBH, *Waiver of Indictment* (ECF No. 1); *Information* (ECF No. 2); *Min. Entry* (ECF No. 8). On February 26, 2015, a district judge sentenced Ms. Thomes to thirty days of incarceration, three years of supervised release, and a $100 special assessment. *Min. Entry* (ECF No. 32); *J.* (ECF No. 34).

If this is Mr. Thomes' wife, there is nothing in the docket to substantiate Mr. Thomes' charge that the federal criminal charge against her was "bogus." In fact, the record reveals that she pleaded guilty to the charge and in a signed statement that Ms. Thomes filed with the Court on February 24, 2015, she took "full responsibility for [her] conduct" and informed the Court that she was "sorry that [she] violated the law by transferring these firearms." *Def.'s Sentencing Mem.* Attach. 1, *Def.'s Objs. and Resps. to the Initial Pre-sentence Report* at 1 (ECF No. 27).

The Court disregards as unsubstantiated and irrelevant Mr. Thomes' allegations about a bogus federal criminal charge being brought against his wife.

this Court is whether the disposition of the property was in accordance with applicable law.

What is before the Court at this time is the sale of 135 Smith Road. The sale is subject to 28 U.S.C. § 2001. This statute establishes a procedure by which property subject to a decree of a federal court may be sold. 28 U.S.C. § 2001(a). In general, a court may approve a sale "upon such terms and conditions as the court directs." *Id.* Specifically, a court may "order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves." *Id.* § 2001(b). The statute provides, however, that before it confirms any private sale, a court "shall appoint three disinterested persons to appraise such property . . . ." *Id.* It states that "[n]o private sale shall be confirmed at a price less than two-thirds of the appraised value." *Id.* The statute also requires that "[b]efore confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days prior to confirmation." *Id.* It also stipulates that "[t]he private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale." *Id.*

A comparison between the requirements of 28 U.S.C. § 2001 and the proposed order reveals that the terms of the proposed order tracks the statutory requirements. Indeed, nearly all of Mr. Thomes' objections to the provisions of the proposed order are objections to the provisions of the federal statute.

Mr. Thomes has made some demands not addressed in the federal statute, which the Court will address separately.

### A.   Property Restoration

First, Mr. Thomes demands that U.S. Bank restore the property to its state at the time the mortgage was executed by his wife. *Dec. Obj.* at 6. The Court is aware of no provision of law that would require a tenant in common, which obtained title through a mortgage foreclosure, to accede to such a request.

### B.   Property Inspection and Personal Property Removal

Mr. Thomes demands to be allowed to inspect the property and to remove his personal property before the sale. *Id.* at 7. As a tenant in common with U.S. Bank, the Court is aware of no law that would prevent Mr. Thomes from inspecting the property at 135 Smith Road in Windham, Maine, and removing his personal property. At the same time, there is nothing in the proposed order that restricts Mr. Thomes' rights as a tenant-in-common and his concern about his inspection rights and his personal property is not a basis for the Court to refuse to grant the proposed order. Given the apparent tension between U.S. Bank and Mr. Thomes, the Court suggests that it would be advisable if Mr. Thomes coordinated any such inspection and removal with U.S. Bank.

### C.   Code Enforcement Review and Property Survey

Mr. Thomes demands that U.S. Bank obtain a code enforcement review and a survey of the property. *Id.* There is nothing in the law that would require such actions from a fellow tenant in common and U.S. Bank contemplates selling the property "as is/where is."

### D.     Delay Until Spring 2022

Mr. Thomes wishes U.S. Bank to wait until spring 2022 to place the property on the market. *Id.* There is nothing in the law that suggest that a court should force a tenant in common to place property on the market only during certain seasons of the year. The Court notes that the initial listing agreement is for sixty days and is subject to renewal for additional sixty-day periods, which foresees the possibility that the property may take time to sell. Furthermore, from a practical perspective, the approved sales price is going to be subject to minimums under the proposed order. *See Third Order* at 2.

### E.     Selection of the Realtor

As for Mr. Thomes selecting the realtor, the law does not give exclusive rights to one tenant in common – either U.S. Bank or Mr. Thomes – to select a real estate broker. U.S. Bank and Mr. Thomes should consider each other's suggestions for a real estate broker and agree, if they can. If not, upon request of the parties, the Court will break the disagreement by selecting one. Mr. Thomes' desire to select the real estate broker does not provide a basis for rejecting the proposed order.

### F.     Foreclosure Costs

11

Mr. Thomes says that U.S. Bank should not be allowed to include its foreclosure costs in its expenses. This was raised by Mr. Penta in his response to the motion for summary judgment. *Resp. to Mot. for Summ. J.* at 5-6 (ECF No. 93). U.S. Bank did not respond to Mr. Penta's argument. *See Summ. J. Order* at 36. However, as the Court reads the proposed order, it does not allow U.S. Bank to deduct the costs of the foreclosure from the gross amount of the sales price. *Third Order* at 3 ("After the payment of all closing costs attributable to the Parties of this case at closing, including appraisal fees, publication fees, broker's commission, real estate taxes, transfer taxes, property tax prorations, and recording fees, where applicable, one-half of the remaining proceeds shall be paid to the Plaintiff; and the remaining half of the proceeds shall be paid in the following order: FIRST: Donald P. Penta pursuant to Writ of Execution dated July 1, 2013, and recorded in the Cumberland County Registry of Deeds in Book 30796, Page 215; SECOND: Surplus, if any, to Defendant Theodore W. Thomes").

### G.     **Personal Property Removed**

As for Mr. Thomes' demand that U.S. Bank's share be reduced by $26,000 for personal property U.S. Bank took from him, *Dec. Obj.* at 8, there is nothing in the record, other than Mr. Thomes' assertion, that confirms the accuracy of this allegation.

### H.     **Donald Penta Lien: Failure to Renew**

In his December 2021 objection, Mr. Thomes complains that Mr. Penta's lien is no longer valid because Mr. Penta failed to file "renewal prior to the expiration date and notify me by legal notice that they were doing so." *Id.* Mr. Thomes is incorrect. Under Maine statute, "[a] lien created pursuant to this section after September 21, 2001 but before September 1, 2020 continues for a period of 20 years from the date of the filing of this writ of execution or of the recording of the writ of execution in the registry of deeds, unless the judgment is paid, discharged or released." 14 M.R.S. § 4651-A(9). Mr. Penta's lien was executed July 1, 2013, and the twenty-year period has not lapsed. *See Compl.* ¶ 14.

### I.     Limited Distribution to U.S. Bank

Mr. Thomes says that U.S. Bank's distribution should be limited to 50% of its original mortgage minus his attorney's fees and personal property claim. *Dec. Obj.* at 9. The Court is aware of no legal basis for this demand.

### IV.    CONCLUSION

The Court approves U.S. Bank's third proposed order and rejects Mr. Thomes' objections.

SO ORDERED.

> / John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 8th day of December, 2021